**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | Judge April M. Perry |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS
<u>COUNT ONE BASED ON THE FIRST AMENDMENT</u>**

> Congress shall make no law . . . *abridging the freedom of speech, or of the press;
> or the right of the people peaceably to assemble, and to petition the Government
> for a redress of grievances.*

U.S. Const., amend. I (emphasis added).

This case threatens core principles of the First Amendment. The Government is seeking to criminalize and chill a broad and diverse social movement engaging in constitutionally protected protest activities by misapplying the law in an effort to silence dissent. By indicting Defendants under an amorphous "spontaneous conspiracy" theory based merely on their coincidental presence and participation in a public protest, the Government is attacking the constitutional rights of expression, assembly and association. As such, Defendants, by and through their undersigned counsel, are compelled to bring this Motion to Dismiss Count One of the Indictment, pursuant to Federal Rules of Criminal Procedure 12(b)(1) and 12(b)(3)(B)(v) based on the First Amendment to the United States Constitution.

## FACTUAL BACKGROUND

On September 6, 2025, President Trump posted a social media meme with the title "Chipocalypse Now," featuring a computer-generated image of himself in miliary attire while the Chicago skyline burns behind him.[1] The post included Trump's commentary, "I love the smell of deportations in the morning" and "Chicago about to find out why it's called the Department of WAR." *Id*. Two days later, the Trump administration announced "Operation Midway Blitz," an aggressive escalation of the administration's targeting of immigrants in the Chicagoland area. *Illinois v. Trump*, 155 F.4th 929, 933 (7th Cir. 2025).

Throughout September, ordinary people across Chicago and neighboring communities assembled in protests to express their opposition to Operation Midway Blitz and the administration's immigration policies. *Id.* Many of these demonstrations occurred in Broadview, Illinois at a facility used by Immigration and Customs Enforcement (ICE) as a detention facility (hereinafter the "Broadview Facility."). *Id.* While "protestors have engaged in small demonstrations outside the Broadview facility, including a weekly prayer vigil," for the past 19 years, "the protests grew in size and regularity following the commencement of Operation Midway Blitz." *Id.*

The assembly at issue in the Indictment occurred outside the Broadview Facility on September 26, 2025, and was attended by approximately 100 to 150 people. *Illinois v. Trump*, 155 F.4th at 934. As video produced by the Government shows, starting early in the morning, each of the Defendants along with dozens of other individuals arrived outside the Broadview Facility to voice their dissent to "Operation Midway Blitz." As the sun rose, protestors engaged in what is called a "Jericho Walk," which involved walking back and forth across a public crosswalk at the

---

[1] https://truthsocial.com/@realDonaldTrump/posts/115158096026629509

intersection of Harvard and 25th Street. [2] This was done under the watchful eye of the Broadview Police Department, which had multiple officers present at the intersection overseeing and permitting the protestors to "Jericho Walk" for hours. Throughout the morning of September 26, 2025, Broadview Police officers helped control traffic, including by halting the "Jericho Walk" and parting the crowd of protestors when vehicles sought to pass through the crosswalk to either enter or leave the facility.

At approximately 7:45 am, a large black Ford Expedition SUV driven by Agent A, an ICE officer, and heading south on 25th Street, without any warning, made a right turn (West) driving directly into peaceful protestors who were gathered at the intersection, many of whom were doing the "Jericho Walk" as they had been for some time that morning. [3] The ICE agent did not wait for the Broadview Police to clear a path in the crowd as was the established practice, did not issue an order instructing the crowd to move aside, and did not identify himself, opting instead to drive (albeit slowly), directly into the crowd.

None of the video recordings provided by the government depict any Defendant causing (or attempting to cause) damage to the SUV, exerting any force against the agent, threatening the agent, or attempting to injure him in any way.[4] Indeed, the conduct of Defendants was quite benign, and consistent with the lawful exercise of their First Amendment rights and with passive resistance protest that has been a hallmark of civil protest in this country since at least the Civil Rights Era.

---

[2] Exhibit A (video will be uploaded to Court's Digital Exhibit portal).
[3] Exhibit B (video will be uploaded to Court's Digital Exhibit portal).
[4] Based on conversations between defense counsel and the former AUSA assigned to this case it is defendants' position that the Government will concede that none of the four defendants charged in this case were responsible for any damage to the Agent's vehicle. The videos also clearly demonstrate the same point.

## INDICTMENT

On October 23, 2025, a seven-count indictment was filed against Defendants, along with two others as to whom the government recently dismissed the charges with prejudice. Count One initially charged six individuals with conspiracy, in violation of 18 U.S.C. §372. Counts Two through Seven initially charged six individuals with violating of 18 U.S.C. §111. On March 13, 2026, the government filed a notice to narrow Count One to the allegation that Defendants:

> *conspired with one another and others*, known and unknown, to prevent by force and intimidation, Agent A, a United States law enforcement officer, from discharging the duties of his office.[5]

Significantly, the Government has never claimed that any Defendant personally caused any damage the agent's SUV, as generally alleged in paragraphs 4 and 5 of Count One. Moreover, in support of the conspiracy charge, the Government has assured the Court it "will be arguing the defendants are guilty based upon their actions."[6] The Indictment alleges the Defendants and others "surrounded the Government Vehicle" and "pushed against the vehicle to hinder and impede its movement."[7] As a result, the indictment avers, "Agent A was forced to drive at an extremely slow rate of speed."[8] The only factual allegations relating specifically to the remaining Defendants set forth in Count One are:

- Defendant Rabbitt "brac[ed] his hands and body against the vehicle and hit[] the windows of the vehicle," (Dkt. #1, ¶7);

---

[5] Dkt. #96, ¶3. At the time that §372 was enacted in 1861, it only included the first clause that the Government has now indicated will be the sole basis of its prosecution. *United States v. Nordean*, No. 21-175 (TJK), 2022 U.S. Dist. LEXIS 222712, at *32 (D.D.C. Dec. 11, 2022). This clause "originally appeared alongside the seditious-conspiracy" offenses now set forth in 18 U.S.C. §2384. *Id.* It is sadly telling that the Government has chosen to use the little-used §372 conspiracy statute that was clearly intended to target those bent on seditious conspiracy and to protect elected officials at a time when the nation was being torn at its seams to instead prosecute U.S. citizens who chose to protest a highly divisive government and its deeply unpopular immigration enforcement agenda.
[6] Exhibit C, Feb. 26, 2026 Tr. 9:12-15.
[7] Dkt. #1, ¶¶4-5.
[8] *Id.*, ¶6.

- Defendant Abughazaleh had "her hands on the hood" and "braced her body and hands against the vehicle while remaining directly in the path of the vehicle," (*id.*, ¶8);

- Defendant Martin "pressed his shoulder against the vehicle while remaining in the path of the vehicle," (*id.*, ¶9); and

- Defendant Straw had "his hands on the hood" and "braced his body and hands against the vehicle while remaining directly in the path of the vehicle," (*id.*, ¶11).

According to the Government's evolving theory, Defendants entered into a "spontaneous conspiracy" that is "based on a tacit or implicit agreement."[9] The Government advised the Court that it has no evidence of any "explicit agreements" between the Defendants and "doubt[s] [such evidence] is forthcoming."[10] The Government has also confirmed its conspiracy allegations are limited to Defendants and other unidentified individuals (alleged "coconspirators") "who were present on September 26th" and "near the intersection" at the time of the events at issue.[11]

Only after Agent A drove his vehicle into the assembled body politic—making contact with Defendants and others with his large SUV—are Defendants alleged to have "crowded together in the front and side of the Government Vehicle and pushed against the vehicle to hinder and impede its movement."[12] As such, the Government's factual basis for their current theory boils down to the following:

(1) On the morning of September 26, 2025, Defendants were part of a peaceful assembly under the watchful eye of the Broadview Police Department at the intersection of Harvard Street and 25th Avenue in Broadview, Illinois; and

(2) Defendants' bodies are alleged to have impeded Agent A's SUV and forced him to drive slowly after he deliberately chose to drive into a crowd of protestors without giving any instruction to clear the street or allowing the Broadview police officers to part the protestors, as they had been doing both before and after Agent A's irruption into the crowd.

---

[9] Ex. C, Feb. 26, 2026 Tr. 7:23-8:6.
[10] Ex. C, Feb. 26, 2026 Tr. 7:23-8:6.
[11] Ex. C, Feb. 26, 2026 Tr. 7:1-14.
[12] Dkt. # 67, at ¶¶ 4-5 (admitting that "the few Broadview police officers on the scene were not in the driveway when the ICE supervisor turned in"); Dkt. #1, ¶¶ 5-6.

**LEGAL STANDARD**

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12. "Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *United States v. Vaughns*, No. 22-CR-00636, 2023 WL 8258575, at *1 (N.D. Ill. Nov. 29, 2023) (citing *United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017)). In deciding a motion under Rule 12, the Court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *United States v. Head*, 734 F. Supp. 3d 806, 808 (N.D. Ill. 2024) (quoting *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)). Moreover, "the Court may decide any questions of law raised in the motion, 'including the constitutionality and interpretation of a federal statute.'" *Id.* (quoting *Vaughns*, 2023 WL 8258575, at *1; citing *United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008)). Such a challenge to the constitutionality of a federal statute, as applied, can be also construed as arguing "the charge fails to adequately state an offense under Criminal Rule 12 (b)(3)(B)(v), because the statute violates" a constitutional right. *United States v. Gutierrez*, No. 1:22-CR-00329, 2024 WL 4041321, at *1 (N.D. Ill. Sept. 4, 2024).

Indeed, under Rule 12(b)(3)(B), a defendant may move to dismiss an indictment if it fails "to state an offense." A court may review the sufficiency of an indictment to determine if it seeks to punish speech protected by the First Amendment. *United States v. Bly,* 510 F.3d 453, 457-58 (4th Cir. 2007) (holding that whether "a written communication contains either constitutionally protected 'political hyperbole' or an unprotected 'true threat' is a question of law"); *United States v. Stock*, 728 F.3d 287, 301 (9th Cir. 2013) (considering First Amendment challenge to indictment alleging threats under 18 U.S.C. §875(c)); *Watts v. United States*, 394 U.S. 705, 707 (1969) (charge "must be interpreted with the commands of the First Amendment clearly in mind").

To be legally sufficient, the indictment "must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (citations omitted); *Russell v. United States*, 369 U.S. 749 (1962). An indictment based on an unconstitutional law, either under a facial or as applied theory, must be dismissed. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737-38 (2017)*; United States v. Sineneng-Smith*, 910 F.3d 461, 479-85 (9th Cir. 2018).

In all criminal prosecutions, "the accused shall enjoy the right ... to be informed of the nature and cause of the accusation," and a defendant may be charged based only on matters actually presented to the grand jury. U.S. Const., amends. V, VI.  In order to satisfy Due Process, a criminal statute must "'define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 561 U.S. 358, 402-03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012) ("A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both."). Thus, a statute that fails to provide a "person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement" is unconstitutionally vague.  *United States v. Williams*, 553 U.S. 285, 304 (2008). To determine if a statue provides such notice to the public and confers such standards to law enforcement, courts consider "the statute, either standing alone or as construed" to confirm whether it was "reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

## ARGUMENT

The text of the First Amendment, the history of its ratification, and controlling precedent make clear that the First Amendment contains broad protections for freedom of assembly, freedom to seek redress of grievances against the government, and the right to association. Accepting the Government's interpretation of 18 U.S.C. §372—and particularly its application in this case— would mean that *any* protestor may be held criminally liable for the actions of another protestor if both participate in the same public assembly. Such an interpretation of 18 U.S.C. §372 necessarily abridges "the right of the people peaceably to assemble." If the Government's interpretation of the statute is correct, 18 U.S.C. §372 would present serious First Amendment concerns. *See United States v. Hansen*, 143 S. Ct. 1932, 1946 (2023) (explaining that the canon of constitutional avoidance counsels adoption of interpretations that do not create a collision between statutes and the Constitution if "fairly possible" and noting that the canon is "normally a valuable ally for criminal defendants, who raise the prospect of unconstitutional applications to urge a narrower construction."). The Government's theory here "makes a crime out of what under the Constitution cannot be a crime." *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971).

Because Defendants challenge the Indictment on First Amendment grounds, the burden is on the government to show the constitutionality of the prosecution. *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 816-17 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Bd. of Trs. v. State Univ. of N.J. v. Fox*, 492 U.S. 469, 480 (1989) ("the State bears the burden of justifying its restrictions"). For these reasons, and because the Government cannot show its prosecution does not violate the First Amendment, Count One of the Indictment fails to state an offense and must be dismissed.

## I.      The First Amendment Contains Broad Protections for Assembly

The freedom of assembly is a core textual freedom enshrined in the First Amendment. While freedom of assembly is often conflated with freedom of speech and freedom of petition, it is an independent right guaranteed by the First Amendment and is equally fundamental to the fragile democracy we all cherish. The freedom of assembly must be most ardently protected in public spaces—such as streets and sidewalks—which courts have labeled "traditional public fora."

### A.  The Plain Text of the First Amendment Creates a Right of Assembly

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. "In interpreting this text, we are guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *D.C. v. Heller*, 554 U.S. 570, 576 (2008) (quoting *United States v. Sprague,* 282 U.S. 716, 731 (1931)). In *Heller*, the Supreme Court makes clear that where the Constitution uses the phrase "right of the people," it "unambiguously refer[s] to individual rights, not 'collective' rights, or rights that may be exercised only through participation in some corporate body." *Id.*, at 579. The right of assembly, then, is guaranteed to "all members of the political community"—including all the Defendants here. *Id.*, at 580. The word assembly, as defined at the time, was understood to mean "[a] company met together." assembly, n.s., *A Dictionary of the English Language, by Samuel Johnson* (1773), *available at* https://johnsonsdictionaryonline.com/1773/assembly_ns.

The text of the First Amendment identifies five separate textual rights which it protects: freedom of religion, freedom of speech, freedom of the press, freedom of assembly, and freedom to petition. U.S. Const., amend. I. The freedom of assembly is "a right cognate to those of free speech and free press and is equally fundamental." *Richmond Newspapers, Inc. v. Virginia*, 448

U.S. 555, 578 (1980) (Burger, C.J., two Justice concurring, four Justices concurring in judgment) (quoting *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937)). Given this, the protections offered by the freedom of assembly should be as broadly construed as those offered by the other textual First Amendment freedoms.

### B. The History of the First Amendment Supports a Broad Right of Assembly

In *Richmond Newspapers*, Chief Justice Burger noted that "[w]hen the First Congress was debating the Bill of Rights, it was contended that there was no need separately to assert the right of assembly because it was subsumed in freedom of speech." 448 U.S. at 577, n.13 (citing 1 Annals of Cong. 731 (1789)). Ultimately, a motion to eliminate an independent right of assembly from the First Amendment was defeated as John Page of Virginia argued that "[i]f the people could be deprived of the power of assembling under any pretext whatsoever, they might be deprived of every other privilege contained in the clause." *Id.*

The right of assembly—unlike other First Amendment rights—was not a right that the drafters simply imported from either the English Bill of Rights or the Virginia Declaration of Rights of 1776, but was instead an invention of the drafters in recognition of the important role such assemblies played in the founding of our nation. Indeed, the right of assembly merited an entirely separate clause in Madison's original proposal to the First Congress on June 8, 1789.[13]

### C. Jurisprudence Supports a Broad Right of Assembly

Last year, in response to abuses by federal agents of the rights of protestors, clergy, and the press during Operation Midway Blitz, Judge Sara L. Ellis issued a decision offering a good summary of existing authority on the freedom of assembly:

> "[O]f all constitutional rights, the freedoms of speech and of assembly are the most perishable, yet the most vital to the preservation of American democracy." *Wolff v.*

---

[13] *Amendments Offered in Congress by James Madison June 8, 1789*, CONST. SOC'Y, http://www.constitution.org/bor/amd_jmad.htm.

*Selective Serv. Loc. Bd. No. 16*, 372 F.2d 817, 822 (2d Cir. 1967); *see, e.g., Thomas v. Collins*, 323 U.S. 516, 530 (1945) ("It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable.").

The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Protest participation is a "pristine and classic" form of protected speech. *Edwards v. South Carolina*, 372 U.S. 229, 235–36 (1963). Undeniably, group demonstrations are quintessentially protected speech. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (holding that the Westboro Baptist Church's "picketing" on public land near a soldier's funeral "is entitled to special protection under the First Amendment" (internal quotation marks omitted)); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 568–69 (1995) (in finding private parade protected by First Amendment, noting that "the inherent expressiveness of marching to make a point explains our cases involving protest[s]" (citing *Gregory v. Chicago*, 394 U.S. 111, 112 (1969); *Edwards*, 372 U.S. at 235)).

Sidewalks and other public ways "occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (internal quotation marks omitted). These public spaces—which courts have labeled "traditional public fora"—"have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939). "In a traditional public forum—parks, streets, sidewalks, and the like—the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). The same analytical framework applies whether the First Amendment right being exercised is speech or other expressive activity such as assembly. *See, e.g., Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991).

*Chicago Headline Club v. Noem*, No. 25 C 12173, 2025 WL 3240782, at *75 (N.D. Ill. Nov. 20, 2025) (parallel citations omitted for space), *vacated on other grounds*, No. 25-3023, 2026 WL 622677 (7th Cir. Mar. 5, 2026).

"[T]he right of assembly was regarded not only as an independent right but also as a catalyst to augment the free exercise of the other First Amendment rights with which it was deliberately linked by the draftsmen." *Richmond Newspapers, Inc.*, 448 U.S. at 577. Thus it is black-letter law

that "streets, sidewalks, and parks are places traditionally open, where First Amendment rights may be exercised." *Id.*, at 578.

## II.    The Defendants Were Engaged in Protected First Amendment Activity

There can be no legitimate dispute that Defendants were participating in a political protest on a public way, which is a "'pristine and classic' form of protected speech." *Edwards v. South Carolina*, 372 U.S. at 235-36. They were vocalizing their opposition to Operation Midway Blitz—an indisputable matter of great public concern—while on public streets, sidewalks, and crosswalks. The Supreme Court has "repeatedly referred to public streets as the archetype of a traditional public forum." *Frisby v. Schultz*, 487 U. S. 474, 480 (1988) (collecting cases). It has also repeatedly protected the right to dissent against government policies. *See Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against"); *Elrod v. Burns*, 427 U.S. 347, 356 (1976) ("political belief and association constitute the core of those activities protected by the First Amendment"); *Texas v. Johnson,* 491 U.S. 397, 411 (1989) ("expression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values").

There also is no dispute in this case that Defendants were present at or near the intersection of Harvard Street and 25th Avenue in Broadview, Illinois on the morning of September 26, 2025. Defendants and other demonstrators were walking across Harvard Street where the sidewalk along 25th Avenue intersects with Harvard Street. Law enforcement was present and permitted the protestors' Jericho Walk to occur throughout the morning.[14] At approximately 7:45 am, Agent A drove south down 25th Avenue and turned west onto Harvard Street and into a crowd of

---

[14] Ex. A.

protestors.[15] Neither Agent A nor the Broadview police officers present gave any instructions to clear the street before Agent A drove into the protesters.[16]

When Agent A initiated contact with the protesters, including Defendants, by driving his three-ton SUV into the assembly, Defendants and other protesters were engaged in First Amendment activity in a public forum where police had permitted them to demonstrate throughout the morning – indeed, in a location specified for such protests by the Village of Broadview. The Constitution "does not permit the police to say to a person go ahead and march and then, five minutes later, having revoked the permission for the march without notice to anyone, arrest the person . . . ." *Vodak v. City of Chi.*, 639 F.3d 738, 746-47 (7th Cir. 2011); *see also Cox v. La.*, 379 U.S. 559, 571 (1965) (holding it unconstitutional to convict someone for protesting when police have permitted the demonstration to take place at that location). To hold otherwise would be "an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *Cox*, 379 U.S. at 571.

The Government has asserted that the conspiracy is based "upon [Defendants'] actions, not their words."[17] In this case, however, the only specific factual allegations supporting the conspiracy claim are that Defendants were all present when Agent A turned on Harvard Street in Broadview and "braced [their] bod[ies] and hands against the vehicle." (Dkt. #1, ¶¶7-12.) Put another way, their only actions—aside from bracing themselves against a vehicle that drove into a crowd of protesters—was being in that crowd of protesters. Their actions are inseparable from the exercise of their constitutional right to assemble—in the exact location where Broadview Police had allowed them to do so all morning.

---

[15] Ex. B.
[16] Ex. B.
[17] Ex. C, Feb. 28, 2026 Tr. 9:12-9:15.

13

### III.     The Government's Application of 18 U.S.C. §372 Raises Grave Constitutional Concerns

The Indictment in this case—and the Government's subsequent admissions to the Court—raise grave constitutional doubts regarding the Government's articulated theory supporting Count One. The Government's evidence of a purported "spontaneous conspiracy" in this case is that all Defendants were in the same location, participating in a public assembly advocating the same political message—their opposition to "Operation Midway Blitz." Of course, that assembly—especially "[i]n a traditional public forum—parks, streets, sidewalks, and the like"—is one of the fundamental freedoms protected by the First Amendment. *Pleasant Grove City*, 555 U.S. at 469. People joining together based on shared beliefs supporting immigrants and opposing government overreach is not a "conspiracy," it is an exercise that is at the core of constitutional protection. *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294 (1981) ("The practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process."); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("[F]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by" the First and Fourteenth Amendments.)

This analysis is especially apt here as the First Amendment separately guarantees freedom of speech, including the right to criticize the government, government officials, and their policy choices. *See New York Times v. Sullivan*, 376 U.S. 254, 273 (1964); *Trulock v. Freeh*, 275 F.3d 391, 404 (4th Cir. 2001); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). "The central commitment of the First Amendment . . . is that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Bond v. Floyd*, 385 U.S. 116, 136 (1966) (quoting *Sullivan*, 376 U.S. at 270).

Case: 1:25-cr-00693 Document #: 100 Filed: 03/16/26 Page 15 of 18 PageID #:417

For the purposes of this discussion the only relevant portion of 18 U.S.C. §372 is that it requires "two or more persons [to] conspire." 18 U.S.C. §372. In the Seventh Circuit, it is well established that "mere association with conspirators" is not sufficient to convict a person of conspiracy. *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008) (quoting *United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985)); Model Pattern Jury Instruction 5.10. Moreover, the government must prove that each "defendant had an agreement or mutual understanding with at least one other person" to commit the substantive offense. Model Pattern Jury Instruction 5.08(A), cmt. c. Indeed, in determining whether a "defendant joined the charged conspiracy" a jury "must base their decision only on what [the] defendant did or said." Model Pattern Jury Instruction 5.10.

The Government's interpretation of 18 U.S.C. §372 here runs afoul of the First Amendment. Under the Government's interpretation of §372, the mere fact that Defendants were all present when Agent A drove into the crowd on Harvard Street and "braced [their] bod[ies] and hands against the vehicle" is sufficient to establish that Defendants had an agreement or mutual understanding. (Dkt. #1, ¶¶7-12.) Such an interpretation, however, is simply incompatible with the freedom of assembly guaranteed by the First Amendment. It is also inconsistent with settled law in the Seventh Circuit, which requires more than mere association or assembly to state a cognizable conspiracy, but that each "defendant had an *agreement* or *mutual understanding* with at least one other person" to commit the substantive offense. Model Pattern Jury Instruction 5.08(A), comment c; 5.10 (emphasis added). Indeed, "the ***defendants' proximity to each other and parallel activities alone*** cannot justify inferring an agreement or meeting of the minds" to support a conspiracy charge. *Black Lives Matter D.C. v. Trump,* 544 F.Supp.3d 15, 40 (D.D.C. 2021), *aff'd sub nom.*, *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (emphasis added) (internal quotations omitted).

The Supreme Court has long held that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857 (2000) (internal citations omitted). Here, the Government's proffered interpretation of §372 wholly undermines the freedoms of assembly and association and puts any protestor at risk of being charged with a felony on account of being in the wrong place at the wrong time *with others*.

The Supreme Court has previously found that the Government cannot "make criminal the exercise of the right of assembly simply because its exercise may be annoying to some people." *Coates*, 402 U.S. at 615. The ordinance at issue in *Coates* made it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and there conduct themselves in a manner annoying to persons passing by . . . ." *Id.*, at 611. Under such an ordinance, "[i]f three or more people meet together on a sidewalk or street corner, they must conduct themselves so as not to annoy any police officer." *Id.*, at 614. The court held that the ordinance was unconstitutional because it "makes a crime out of what under the Constitution cannot be a crime." *Id.*, at 616.

To hold Defendants here criminally liable for the actions of other demonstrators would necessarily rely on "guilt by association," which the Supreme Court has repeatedly and sharply warned against. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19, 925 (1982) (citing *Scales v. United States*, 367 U.S. 203, 229 (1961); *Noto v. United States*, 367 U.S. 290, 299 (1961); *Healy v. James*, 408 U.S. 169, 185-186 (1972)). In *Claiborne*, the Supreme Court held that the constitutional right of association prevented punishment of individuals under a theory of conspiracy simply because they were involved with a social movement in which other individuals engaged in unlawful activity. *Claiborne*, 458 U.S. at 908 (1982). The instant prosecution presents this precise problem.

Likewise, the Government seeks to hold Defendants criminally liable in a conspiracy for property damage committed by unknown individuals simply because they were present at the same protest. To be clear, "unlawful activity by a few protesters does not transform a peaceful assembly into an unlawful assembly." *Chicago Headline Club*, 2025 WL 3240782, at *77 (citing *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020) ("The many peaceful protestors, journalists, and members of the general public cannot be punished for the violent acts of others.")).

Put simply, the Government's theory violates the Constitution because the evidence to support the purported conspiracy is the Defendants' exercise of their First Amendment rights of assembly and association. The Government concedes that there was no explicit criminal agreement or pre-planning, and that it must rely on a "tacit or implicit agreement" to prove its highly unusual "spontaneous conspiracy" claim. The only factual basis for that "implicit agreement" is that Defendants were each present at the same location and participating in a protest against Operation Midway Blitz at the Broadview Facility. A prosecution based on these allegations thus criminalizes Defendants' rights to public assembly and association, as guaranteed by the First Amendment. Count I must be dismissed.

## IV. This Indictment Creates a Dangerous Chilling Effect on Free Speech

The Government's theory of conspiracy in this case not only violates the rights of Defendants; it chills the exercise of First Amendment rights—including the freedom of assembly—throughout the Northen District of Illinois. "The mere potential for the exercise of [censorial] power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom." *United States v. Alvarez*, 567 U.S. 709, 723 (2012). *See also Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (A "realistic threat of arrest is enough to chill First Amendment rights.").

That a misdemeanor under 18 U.S.C. §111 can be escalated to a felony conspiracy charge simply because it occurred in the midst of an otherwise peaceable assembly creates a substantial risk of chilling the public's willingness to exercise their First Amendment rights of freedom of assembly and freedom of speech. Given the events of the last few months, members of the public are now understandably confused as to whether their presence at a protest outside of the Broadview Facility—or in their own neighborhood when ICE or CBP agents are present, or in the streets of Minneapolis, or Atlanta, or Nashville—will be interpreted by the Government as participation in a conspiracy. Federal law does not license such censorship; to the contrary, the First Amendment prohibits it.

## V.     Conclusion

Defendants respectfully request the Court grant this motion and dismiss Count One.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2900
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com
*Attorney for Katherine Marie Abughazaleh*

**/s/ Theodore Thomas Poulos**
**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tpoulos@cotsiriloslaw.com
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*